UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LIFEBRITE LABORATORIES, LLC and CHRISTIAN FLETCHER,<br><br>Plaintiffs,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC. d/b/a FLORIDA BLUE; BLUE CROSS BLUE SHIELD HEALTHCARE PLAN OF GEORGIA, INC.; ELEVANCE HEALTH, INC. f/k/a ANTHEM INSURANCE COMPANIES, INC.; UNITEDHEALTH GROUP INCORPORATED; AETNA HEALTH INC. (Georgia); and AETNA HEALTH INC. (Florida),<br><br>Defendants. | CIVIL ACTION NO.<br>1:23-cv-03748-JPB |

# **ORDER**

Before the Court are the following motions: (i) Motion to Dismiss filed by Defendant Elevance Health, Inc. ("Elevance"), ECF No. 82; (ii) Motion to Conduct Jurisdictional Discovery filed by Plaintiffs LifeBrite Laboratories, LLC and Christian Fletcher (collectively "Plaintiffs"), ECF No. 88; and (iii) Motion to Strike filed by Plaintiffs, ECF No. 96. The Court finds as follows:

I.  **BACKGROUND**

Plaintiffs filed suit alleging that the defendants are liable for fabricating allegations of billing fraud against Plaintiffs and then lobbying federal authorities to bring criminal charges against Plaintiffs for such alleged fraud.  Plaintiffs claim that the defendants took those actions with the intent that an indictment would cripple Plaintiffs' business and allow the defendants to avoid paying hundreds of millions of dollars in laboratory testing claims.  Plaintiffs allege causes of action for Malicious Prosecution (Count I), Georgia RICO (Count II), Tortious Interference With Contractual Relations (Count III), Tortious Interference With Business Relations (Count IV), Fraudulent Scheme (Count V) and Defamation (Count VI).

Elevance contends that this Court lacks personal jurisdiction over it.  With respect to the specific allegations against Elevance, the First Amended Complaint ("FAC") asserts that:

> Defendant Elevance Health, Inc. f/k/a Anthem Insurance Companies, Inc. ("Anthem") is an Indiana corporation that is headquartered in Indianapolis, Indiana.  [Elevance], through its subsidiaries, is authorized to do business in the state of Georgia and does in fact transact business in Gwinnett County.
>
> FAC, ECF No. 64, ¶ 13.
>
> This Court has personal jurisdiction over foreign Defendants Florida Blue, [Elevance], UHC and Aetna because they all have

minimum contacts with the State of Georgia, transact substantial business in the State of Georgia, have committed torts in the State of Georgia, and have aided and abetted, and tortiously conspired with, Defendants BCBS Ga and Aetna Georgia, which are Georgia corporations; and they have done so in Gwinnett County.

*Id.* ¶ 17.

[Elevance] was also investigating a spike in insurance claims for its members that were submitted by or on behalf of rural hospitals in Florida, Georgia and Missouri. [Elevance] investigators discussed their investigation with investigators from Florida Blue and others. After these discussions, [Elevance] claimed that these rural hospitals were engaging in an insurance billing fraud scheme similar to that alleged by Florida Blue and other Defendants.

*Id.* ¶ 126.

On information and belief, [Elevance] discovered in or around 2017 that the laboratory services claims did not contain POS Code 22 and therefore were not billed fraudulently. Yet [Elevance] continued to accuse Plaintiffs and others of engaging in an insurance billing fraud scheme through the inclusion of a POS Code on the claims.

*Id.* ¶ 127.

[Elevance] provided claims data spreadsheets to the DOJ in response to Grand Jury subpoenas that showed that the laboratory services claims were billed using POS Code 22. [Elevance] did not disclose to the DOJ or to the Grand Jury that, in fact, none of the claims were submitted using a POS Code 22 and that these codes were inserted by [Elevance].

*Id.* ¶ 128.

> [Elevance] did not disclose to the Grand Jury or federal authorities that the laboratory services claims were submitted using code 141 and that such coding was entirely proper and legitimate.
>
> *Id*. ¶ 129.
>
> [Elevance's] corporate representative in a separate proceeding involving a different rural hospital admitted under oath that code 141 was the proper way to bill the insurer for non-patient samples collected and tested through a hospital laboratory outreach program. This information was concealed from federal authorities and the Grand Jury.
>
> *Id*. ¶ 130.

## II.  ANALYSIS

### A.  Motion to Dismiss

A motion to dismiss for lack of personal jurisdiction is analyzed according to a "three-step burden-shifting process."  *Diulus v. Am. Express Travel Related Servs. Co., Inc.*, 823 F. App'x 843, 848 (11th Cir. 2020).

> First, the plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." Second, if the complaint alleged sufficient facts, and "the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction."  Third, "[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff."

*Id*. (citations omitted) (alteration in original).

Thus, the court will look beyond the plaintiff's complaint "*only if* (1) the complaint alleged sufficient facts to make out a prima facie case of personal jurisdiction, and (2) the defendant challenges jurisdiction by submitting affidavit evidence in support of its position." *Id.* at 849 (citations omitted) (emphasis added). If the plaintiff does not meet the initial burden to allege sufficient facts to make out a prima facie case of personal jurisdiction, "the district court [does not] go to the second and third steps of the burden-shifting process, and the [defendant's] motion should be granted." *Id*.

To determine whether a plaintiff has met the initial burden to demonstrate that personal jurisdiction exists, courts employ a "two-step inquiry." *See Mut. Serv. Ins. Co. v. Frit Indus., Inc.,* 358 F.3d 1312, 1319 (11th Cir. 2004). First, the court "determine[s] whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." *Id.* Second, if the forum state's long-arm statute allows for personal jurisdiction, the court then "examine[s] whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment." *Id.* The Court addresses each step in turn.

    1.    **Georgia's Long-arm Statute**

In relevant part, Georgia's long-arm statute allows a court to exercise personal jurisdiction over a nonresident corporation if that corporation:

> (1) Transacts any business within [Georgia];
>
> (2) Commits a tortious act or omission within [Georgia], except as to a cause of action for defamation of character arising from the act; [or]
>
> (3) Commits a tortious injury caused by an act or omission outside [Georgia] if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Georgia].

O.C.G.A. § 9-10-91.

A foreign corporation transacts business in Georgia when it has purposefully done some act or consummated some transaction in Georgia, which can include both tangible and intangible contacts, such as mail and telephone calls. *See Diamond Crystal Brands, Inc.* v. *Food Movers Int'l, Inc.*, 593 F.3d 1249, 1264 (11th Cir. 2010). As relevant here,

> [i]t is well established that as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other. Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there. Where the "subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary."

*Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) (citations omitted). Thus, jurisdiction facts of the subsidiary may be imputed to the

parent only by showing that the subsidiary's existence is "simply a formality," and the subsidiary is "merely" the parent's agent. *Id*. at 1294.

As an initial matter, Plaintiffs allege that Elevance is an Indiana corporation with its headquarters in Indiana and that it transacts business in Georgia "through its subsidiaries." However, Plaintiffs do not allege any facts that show that Elevance's subsidiaries are merely a formality and serve as Elevance's agents. Plaintiffs have therefore failed to demonstrate that Elevance, itself, has transacted business or committed tortious acts or omissions in Georgia such that it is subject to jurisdiction here.[1]

Setting aside this flaw in Plaintiffs' FAC, the remaining allegations similarly do not tie any of Elevance's alleged actions to the State of Georgia. The FAC asserts that Elevance investigated insurance claims submitted by rural hospitals;

---

[1] The Court notes that paragraph 17 of the FAC alleges that this Court has personal jurisdiction over Elevance because Elevance and the other defendants "all have minimum contacts with the State of Georgia, transact substantial business in the State of Georgia, have committed torts in the State of Georgia, and have aided and abetted, and tortiously conspired with, Defendants BCBS Ga and Aetna Georgia, which are Georgia corporations; and they have done so in Gwinnett County." These generalized allegations and legal conclusions are, however, insufficient to satisfy Plaintiffs' pleading obligations. *See Warren Tech., Inc. v. UL LLC*, 962 F.3d 1324, 1328 (11th Cir. 2020) (stating that although a court in deciding a motion to dismiss generally accepts the non-moving party's allegations as true, it is "not required to credit 'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts'") (citation omitted).

discussed its investigation with other insurance companies; reported that the hospitals engaged in billing fraud; discovered that there was no fraud yet continued to accuse Plaintiffs of fraud; provided fraudulent claims data to the United States Department of Justice; and failed to inform federal authorities and the grand jury that ultimately indicted Plaintiffs that Plaintiffs' billing was not fraudulent. But these allegations in no way indicate that Elevance either transacts business in Georgia (subsection (1) of the long-arm statute) or engages in other persistent course of conduct or derives substantial revenue from Georgia (subsection (3) of the long-arm statute).

Under subsection (1) of the statute, transacting business in Georgia means the non-resident defendant "'has purposefully done some act or consummated some transaction in Georgia.'" *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1264 (11th Cir. 2010) (quoting *Aero Toy Store, LLC v. Grieves*, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006)). *See also Kason Indus., Inc. v. Dent Design Hardware, Ltd.*, 952 F. Supp. 2d 1334, 1344 (N.D. Ga. 2013) (stating that "[j]urisdiction under subsection (1) of the long-arm statute expressly depends on the actual transaction of business—the doing of some act or consummation of some transaction—by the defendant in the state") (internal punctuation omitted). "Therefore, [the court] examine[s] all of a nonresident's tangible and intangible

conduct and ask[s] whether it can fairly be said that the nonresident has transacted any business within Georgia." *Diamond*, 593 F.3d at 1264.  Factors courts will consider under this subsection include whether:  the defendant has offices, manufacturing plants or distribution facilities in Georgia; has ever registered to do business here; has employees, distributors or sales representatives residing or working in Georgia; pays taxes here; targets Georgia through print, television, radio or Internet advertising; and directly sells its products in Georgia or to distributors located in Georgia.  *See Kason*, 952 F. Supp. 2d at 1345.

Under subsection (3) of the statute, the plaintiff must show both an injury in Georgia and one of three additional requirements:  that the defendant "regularly does or solicits business, … engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Georgia]."  *Kason*, 952 F. Supp. 2d at 1347.  *See also SG Design*, 2010 WL 11602013, at *5 (finding no jurisdiction under subsection (3) where the defendant showed that "it has (1) never maintained any corporate location, leasehold, business office, manufacturing facility or sales location in Georgia; (2) not conducted marketing or advertising in Georgia; (3) never been authorized to do business in Georgia; (4) not designated an agent for service of process in Georgia; (5) never maintained any bank accounts or brokerage accounts in Georgia; (6)

never owned or controlled any real or personal property in Georgia; and (7) never had any employee transact business in Georgia on its behalf").

Here, there is no allegation that Elevance has purposely engaged in some act or transaction *in Georgia*. Indeed, the FAC is silent on *where* Elevance's alleged investigative acts occurred. Similarly, there is no allegation that Elevance is authorized to do business in Georgia or that an employee transacted business in Georgia on behalf of Elevance. Plaintiffs allege only that Elevance is authorized to do business through its subsidiaries. But as set forth above, a parent and its subsidiary are two separate entities, and the jurisdictional facts of the subsidiary cannot be imputed to the parent. By comparison, Plaintiffs allege that some of the other defendants transact business in Georgia by having licensee companies in Georgia and having a registered agent for service of process in Georgia.

Additionally, the FAC expressly states that a Blue Cross Blue Shield of Georgia ("BCBS Ga") employee made the referral of fraudulent activity to federal authorities in Georgia. Plaintiffs also note that although BCBS Ga was acquired by Elevance in 2019, it was not owned by or affiliated with Elevance during the relevant time.

For these reasons, subsections (1) and (3) of the Georgia long-arm statute do not apply here.

Allegations in the FAC that could bear on subsection (2) of Georgia's long-arm statute are those describing Elevance's investigation and representations to federal authorities regarding Plaintiffs' actions.

Under subsection (2) of the statute, "an out-of-state defendant must do certain acts within the [state] before he can be subjected to personal jurisdiction." *Gust v. Flint*, 356 S.E.2d 513, 514 (Ga. 1987).  Indeed, "[t]he clear language of subsection (2) requires that the nonresident defendant commit a tortious act *in the state of Georgia*." *Thomas v. Strange Eng'g, Inc.*, No. 1:11-cv-074, 2012 WL 993244, at *4 (S.D. Ga. Mar. 22, 2012) (quoting O.C.G.A. § 9–10–91(2)).  *See also LABMD, Inc. v. Tiversa, Inc.*, 509 F. App'x 842, 844–45 (11th Cir. 2013) (finding that because the defendants "used computers outside of Georgia" to commit the alleged acts, they were not subject to personal jurisdiction under subsection (2)); *Anderson v. Deas*, 615 S.E.2d 859, 862 (Ga. Ct. App. 2005) (finding that because the alleged telephone calls causing injury in Georgia were placed outside the state, those actions could not serve as a basis for jurisdiction under subsection (2) of the long-arm statute); *SG Design & Mfg. Co. Ltd. v. Vigor Int'l Ltd.*, No. 1:09-cv-750, 2010 WL 11602013, at *5 (N.D. Ga. May 18, 2010) (finding no jurisdiction under subsection (2) where the allegedly infringing

11

products were designed, manufactured and shipped in China, and the sale of the products was negotiated exclusively via mail and email from China).

In this case, there is no allegation in the FAC that Elevance took any of the alleged actions in Georgia or that the alleged actions otherwise constitute a tortious act or omission *within* Georgia.  The FAC does not tie any of the allegations against Elevance to the State of Georgia.  It is silent regarding where the actions took place.  On these facts, the Court finds that subsection (2) of the long-arm statute also does not apply here.

In sum, Plaintiffs have failed to allege sufficient facts to satisfy any of the requirements of Georgia's long-arm statute.

### 2. Due Process Requirements

Even if the Complaint alleged sufficient facts to satisfy the requirements of Georgia's long-arm statute, it does not show that exercising jurisdiction over Elevance comports with due process.

In determining whether personal jurisdiction comports with due process, courts "recogniz[e] two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021);

*see also Consol. Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1291 (11th Cir. 2000) (distinguishing between general and specific jurisdiction).

### a. General Jurisdiction

General jurisdiction may be exercised "only when a defendant is 'essentially at home in the [forum] State,'" and such jurisdiction extends to all claims a plaintiff may bring. *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)). A defendant corporation is typically "at home" at its "place of incorporation and principal place of business." *Daimler AG v. Bauman,* 571 U.S. 117, 139 n.19 (2014).[2]

Here, Plaintiffs do not allege that Elevance is incorporated in Georgia or that it maintains its principal place of business in Georgia. To the contrary, Plaintiffs allege that Elevance is an Indiana corporation with its headquarters in Indiana. Plaintiffs also do not allege exceptional circumstances that would render Elevance at home in Georgia. Notably, the FAC does not allege Elevance (as opposed to its subsidiaries) conducted activity in Georgia.

---

[2] The *Daimler* court noted that there may be "exceptional" circumstances where a company's operations in the forum state are "so substantial and of such a nature as to render" the company at home in that state, despite not being incorporated or having its principal place of business there.

13

For these reasons, the Court finds that the FAC fails to allege sufficient facts to support the exercise of general jurisdiction over Elevance.

### b. Specific Jurisdiction

Unlike general jurisdiction, specific jurisdiction does not extend to all claims brought by a plaintiff. Rather, it is "'confined to [the] adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *HD Supply Const. Supply, Ltd. v. Mowers*, No. 1:19-CV-02750-SDG, 2020 WL 5774786, at *6 (N.D. Ga. Sept. 28, 2020) (quoting *Bristol-Meyers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017)).

To determine whether specific jurisdiction exists, courts examine the following three factors:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" [itself] of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier, S.A v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citations omitted). The plaintiff has the burden to establish the first two factors, after which the burden shifts to the defendant to establish the third, *i.e.*, make a

"compelling" case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. *Id.*

Here, Plaintiffs do not allege facts to satisfy their burden on either of the first two factors of the analysis. First, the FAC does not allege any contacts between Elevance and Georgia. As set forth above, there is no indication in the FAC that Elevance transacts business in Georgia, engages in any persistent course of conduct in Georgia or took any of the allegedly wrongful actions in Georgia. As such, the FAC has not established a Georgia contact to which specific jurisdiction could attach.

Second, for the reasons described in Section II(A)(1), *supra*, the Court finds that the FAC does not allege facts showing that Elevance purposefully availed itself of the privilege of conducting business in Georgia.

Because Plaintiffs failed to offer any contacts between Elevance and Georgia to which specific jurisdiction could attach or any facts showing that Elevance purposefully availed itself of the privilege of conducting business in Georgia, the Court finds that the allegations in the FAC do not support the exercise of specific jurisdiction over Elevance.

Based on the foregoing analysis, the Court finds that Plaintiffs have failed to establish a prima facie case that the Court may exercise personal jurisdiction over

Elevance.[3]  Consequently, the Court does not look beyond the FAC to consider the additional facts, including those set forth in affidavits and other documents, that Plaintiffs proffer in opposition to Elevance's Motion to Dismiss.[4]  *See Diulus*, 823 F. App'x at 849.

### B.  Motion to Conduct Jurisdictional Discovery

Plaintiffs seek leave to conduct discovery relating to their personal jurisdiction allegations against Elevance.  Generally, they seek information regarding (i) Elevance's analysis of billing data underlying the Hospitals' claims for payment; (ii) its role in the investigation of Plaintiffs; and (iii) its liability for claims submitted by the Hospitals.  *See* ECF No. 88-1 at 4-6.

---

[3] Plaintiffs argue in their reply brief in support of their Motion to Conduct Jurisdictional Discovery that the FAC sufficiently alleges the exercise of personal jurisdiction over Elevance because it alleges that Elevance "conspired with Georgia corporations; concocted a billing fraud theory based on a Georgia investigation that [Elevance] knew was false; and presented claims data spreadsheets in support of its false theory to federal authorities which formed the basis of prosecution of a Georgia resident." ECF No. 95 at 5.  Notwithstanding that Plaintiffs did not make this argument in their opposition to Elevance's Motion to Dismiss, to the extent that they argue that personal jurisdiction over Elevance is appropriate based on a conspiracy or an aiding and abetting theory, Plaintiffs have not pointed to specific factual allegations in the FAC that would support such an extension of personal jurisdiction, nor have they cited to any authority for that proposition.

[4] Because the Court did not look beyond the FAC in deciding Elevance's Motion to Dismiss, the Court **DENIES** as moot Plaintiffs' Motion to Strike, which concerns declarations attached to Elevance's reply brief in support of its Motion to Dismiss.

Elevance responds that Plaintiffs' motion should be denied because Plaintiffs have failed to plead a prima facie case of personal jurisdiction, and they merely seek to engage in an "aimless fishing expedition." ECF No. 91 at 2.

"The purpose of jurisdictional discovery is to ascertain the truth of the allegations or facts underlying the assertion of personal jurisdiction." *Atlantis Hydroponics, Inc. v. Int'l Growers Supply, Inc.*, 915 F. Supp. 2d 1365, 1380 (N.D. Ga. 2013) (citing *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1305 (N.D. Ga. 2005)).  The "power to order jurisdictional discovery . . . is not entirely discretionary," and "federal courts should order limited jurisdictional discovery where the information the plaintiff seeks, if it exists, would give rise to jurisdiction." *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 790–91 (11th Cir. 2014).  However, jurisdictional discovery "is not a vehicle for a fishing expedition in hopes that discovery will sustain the exercise of personal jurisdiction." *Atlantis*, 915 F. Supp. 2d at 1380 (citation omitted).  Therefore, it is not an abuse of discretion to deny jurisdictional discovery where the resolution of the motion to dismiss does not turn on findings of fact or the evidence sought would not affect the court's jurisdiction. *See RMS Titanic, Inc.*, 579 F. App'x at 790–91.

Moreover, "[i]nasmuch as the complaint [is] insufficient as a matter of law to establish a *prima facie* case that the district court ha[s] jurisdiction, the district court abuse[s] its discretion in allowing [a] case to proceed and granting discovery on the jurisdictional issue." *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1314 (11th Cir. 2009); *see also Cold Smoke Capital, LLC v. Gross*, No. 1:11-cv-3558, 2012 WL 3612626, at *8 (N.D. Ga. Aug. 21, 2012) (stating that "a district court may properly refuse or limit jurisdictional discovery if the plaintiff has not made a sufficient showing that there may be a basis for exercise of jurisdiction, or if the proposed discovery seems unlikely to shed light on the jurisdictional question").

In *Diulus*, the plaintiffs argued on appeal that even if they did not allege a prima facie case of personal jurisdiction over the defendant, the district court should have allowed them to conduct jurisdictional discovery. 823 F. App'x at 849. The Eleventh Circuit Court of Appeals rejected that argument, reiterating that "a district court does not abuse its discretion by denying jurisdictional discovery if 'the complaint was insufficient as a matter of law to establish a prima facie case that the district court had jurisdiction.'" *Id*. (citing *Butler*, 579 F.3d at 1314). The court concluded that the district court properly denied the motion for jurisdictional discovery "[b]ecause the [plaintiffs] did not meet their initial burden to allege a prima facie case of personal jurisdiction." *Id*. at 849-50.

Applying the reasoning of *Butler* and *Diulus* here, the court denies Plaintiffs' Motion to Conduct Jurisdictional Discovery because Plaintiffs failed to allege a prima facie case of personal jurisdiction with respect to Elevance.

### III. CONCLUSION

As set forth herein, Plaintiffs have failed to establish a prima facie case that this Court may exercise personal jurisdiction over Elevance. Accordingly, Elevance's Motion to Dismiss, ECF No. 82, is **GRANTED**, and Plaintiffs' Complaint as to Elevance is hereby **DISMISSED WITHOUT PREJUDICE**. Plaintiffs may amend their FAC within fourteen days of the date of this Order to address the deficient jurisdictional allegations.

Plaintiffs' Motion to Conduct Jurisdictional Discovery, ECF No. 88, is **DENIED** on the merits, and Plaintiffs' Motion to Strike, ECF No. 96, is **DENIED** as moot.

**SO ORDERED** this 17th day of June, 2024.

_____
**J. P. BOULEE**
United States District Judge