UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LIFEBRITE LABORATORIES, LLC
and CHRISTIAN FLETCHER,

       Plaintiffs,

    v.

BLUE CROSS AND BLUE SHIELD
OF FLORIDA, INC. d/b/a FLORIDA
BLUE; BLUE CROSS BLUE SHIELD
HEALTHCARE PLAN OF
GEORGIA, INC.; ELEVANCE
HEALTH, INC. f/k/a ANTHEM
INSURANCE COMPANIES, INC.;
UNITEDHEALTH GROUP
INCORPORATED; AETNA
HEALTH INC. (GEORGIA); AND
AETNA HEALTH INC. (FLORIDA),

       Defendants.

CIVIL ACTION NO.
1:23-cv-03748-JPB

## <u>ORDER</u>

This matter came before the Court on Defendants Blue Cross and Blue

Shield of Florida, Inc. d/b/a Florida Blue ("Florida Blue"), UnitedHealth Group

Incorporated ("UnitedHealth"), Elevance Health, Inc. ("Elevance"), Blue Cross

Blue Shield Healthcare Plan of Georgia, Inc. ("BCBSGA"), Aetna Health Inc.

(Georgia) and Aetna Health Inc. (Florida)'s (collectively "Defendants") Motion to

Dismiss ("Motion") the First Amended Complaint ("FAC").  ECF No. 83.  Having reviewed and fully considered the parties' arguments, the Court finds as follows:

## I.   <u>BACKGROUND</u>

As alleged in the FAC, Plaintiff LifeBrite Laboratories, LLC ("LifeBrite") is a medical testing laboratory located in Atlanta, Georgia, and Plaintiff Christian Fletcher ("Fletcher") is the founder and CEO of LifeBrite.  LifeBrite and Fletcher are collectively referred to as "Plaintiffs."

LifeBrite served as a "reference" laboratory for Campbellton Graceville Hospital, Regional General Hospital and Putnam County Memorial Hospital (collectively the "Hospitals").  This means that the Hospitals referred patients to LifeBrite for testing services in connection with the Hospitals' laboratory "outreach" programs.  An outreach program expands the client base for a hospital's laboratory services to patients of other entities, such as physician groups, pain management clinics and substance abuse centers.  The testing may be done at the hospital's laboratory or at an outside "reference" laboratory affiliated with the hospital.  Outreach programs improve the financial stability of hospitals by helping them increase revenue and profitability.

Under LifeBrite and the Hospitals' affiliate arrangement, all billing to patients' insurance carriers for services LifeBrite rendered was handled by the

Hospitals.  The Hospitals submitted claims to insurance carriers using the UB-04 uniform medical billing form.  One type of billing code that can be designated on the UB-04 billing form is code 141, which signifies that the laboratory services were provided for a "nonpatient" (an individual who is not an "inpatient" or "outpatient" of the hospital).  A claim submitted with a 141 code indicates that the claim concerns services for a patient who was not physically present at the hospital.

Plaintiffs allege that Defendants at some point observed a spike in claims for laboratory testing services submitted by the Hospitals.  Defendants had paid millions of dollars for laboratory testing of nonpatients of the Hospitals and were facing the prospect of paying millions more for future claims.  Plaintiffs assert that because Defendants could not find legal support for denying future payments, they embarked on a scheme and conspired to withhold payment of tens of millions of dollars owed to the Hospitals and others involved in the outreach programs.

The scheme allegedly involved Defendants providing false documents and information to the United States Department of Justice ("DOJ") regarding Plaintiffs and others who were involved in the outreach programs.  Specifically, Plaintiffs claim that Defendants reported the laboratory outreach programs and

Plaintiffs' role therein as criminal healthcare billing fraud accomplished through the submission of false claims for payment.

Defendants allegedly accused Plaintiffs and others of engaging in a POS (Place of Service) code 22 billing fraud scheme.  A POS code 22 is a code used for the testing of patients physically present at the hospital.  To that end, Plaintiffs claim that Defendants falsely inserted a POS code 22 in the documents and spreadsheet data provided to the DOJ, even though Defendants knew that the invoices submitted by the Hospitals had a billing code of 141 (the code for nonpatients).  According to Plaintiffs, the billing code of 141 "honestly and accurately represented" the nature of the transactions.  Plaintiffs assert that Defendants also participated in meetings with federal investigators regarding the alleged scheme.

Based on Defendants' representations, the DOJ obtained a grand jury indictment of Fletcher and others and took the case to trial.  Fletcher's first trial resulted in a hung jury, and the court denied his motion for acquittal.  Fletcher was acquitted at a second trial.

The bottom line of Plaintiffs' FAC is that Defendants are liable for *fabricating* allegations of billing fraud and then lobbying federal criminal authorities to bring criminal charges against Plaintiffs with the intent that an

indictment would destroy their business and allow the carriers to avoid paying legitimate laboratory testing claims.

Plaintiffs allege causes of action for Malicious Prosecution (Count I), Georgia RICO (Count II), Tortious Interference With Contractual Relations (Count III), Tortious Interference With Business Relations (Count IV), Fraudulent Scheme (Count V) and Defamation (Count VI).

Defendants seek to dismiss the FAC on the grounds of lack of subject matter jurisdiction (pursuant to Federal Rule of Civil Procedure 12(b)(1)) and failure to state a claim (pursuant to Rule 12(b)(6)).  Defendants argue this Court lacks subject matter jurisdiction over them because they are immune to Plaintiffs' claims.  This argument will be evaluated under Rule 12(b)(1).  *See Watkins v. Willis*, No. 22-11602, 2023 WL 4614497, at *4 (11th Cir. July 19, 2023) (affirming the district court's decision that it lacked subject matter jurisdiction over a defendant who demonstrated that she had sovereign immunity to the claims).  All other arguments for dismissal relate to affirmative defenses or contentions that Plaintiffs have failed to state a claim upon which relief may be granted and will therefore be evaluated under Rule 12(b)(6).

II.   **ANALYSIS**

The Court begins its analysis with an evaluation of Defendants' subject matter jurisdiction arguments and will then address the challenge to the sufficiency of Plaintiffs' pleadings.

### A.   Subject Matter Jurisdiction

Defendants argue that Plaintiffs' claims are barred by the doctrine of sovereign immunity because Defendants reported their suspicion of fraud to the federal authorities in the course of their duties administering the federal government's Federal Employees Health Benefits Program ("FEHBP").  They contend that, in that role, they were acting as agents of and under the authority and direction of the United States Office of Personnel Management ("OPM"), which has responsibility for the FEHBP.

Plaintiffs respond that the immunity does not apply here because Defendants are accused of fraudulent and intentionally tortious conduct; the federal government is not the real party in interest; and Defendants were not acting under the authority of OPM when they made the subject fraudulent allegations.

### 1.   Legal Standard

"[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to

the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).  If the challenge is facial, the court must consider the allegations of the complaint to be true for the purposes of ruling on the motion—similar to the standard for evaluating a motion to dismiss under Rule 12(b)(6).  *Id.*  The court must also view the allegations in the light most favorable to the non-moving party.  *See Kinnett v. Strayer Educ., Inc.*, 501 F. App'x 890, 892 (11th Cir. 2012) ("At the motion to dismiss stage, [the court] accept[s] all well-pleaded facts as true, and construe[s] the reasonable inferences therefrom in the light most favorable to the plaintiff.") (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir.2006)).

On the other hand, in evaluating a factual attack on subject matter jurisdiction, the court considers matters outside the pleadings such as testimony and affidavits.  *Id.*  In short, "[t]he district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases:  (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981) (alteration in original)).  In this case, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts

will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

Regardless of whether the attack on subject matter jurisdiction is facial or factual, "[t]he burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Sweet Pea Marine, Ltd. v. APJ Marine*, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005).

## 2.   **Immunity Defenses**[1]

In *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 20–21 (1940), the United States Supreme Court explained that a contractor of the government may be protected from liability for actions taken at the direction of the government when the authority to act was "validly conferred."  There is no protection from liability when the basis of the claim is "either that [the contractor] exceeded his authority or that [the authority] was not validly conferred."  *Id*.  *See also In re Fort Totten Metrorail Cases Arising Out of Events of June 22, 2009*, 895 F. Supp. 2d 48, 74 (D.D.C. 2012) (stating that "'[w]hile *Yearsley* established that a private corporation performing governmental functions pursuant to contractually delegated authority will not be liable in tort to third parties, it also acknowledged that an agent or

---

[1] The Court will consider facts and documents offered by Defendants that are not referenced in the FAC because Defendants assert a factual attack on subject matter jurisdiction.

officer of the [g]overnment purporting to act on its behalf, but in actuality exceeding his authority, shall be liable for his conduct causing injury to another'") (citation omitted).

Additionally, if a defendant's actions "are such as to create a personal liability, whether sounding in tort or in contract, the fact that [he] is an instrumentality of the sovereign does not, of course, forbid a court from taking jurisdiction over a suit against him." *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 686 (1949); *see also Brooks v. Blue Cross & Blue Shield of Fla.*, Inc., 116 F.3d 1364, 1382–83 (11th Cir. 1997) (agreeing with the plaintiffs that the health insurer was not entitled to sovereign immunity to the extent that the plaintiffs pleaded an injury resulting from the insurer's fraudulent conduct).

Finally, a "fiscal intermediary is entitled to sovereign immunity to the extent that the government is exposed to financial risk." *Livingston v. Blue Cross & Blue Shield of Alabama*, 788 F. Supp. 545, 548 (S.D. Ala. 1992), *aff'd sub nom. Livingston v. Blue Cross*, 996 F.2d 314 (11th Cir. 1993). In *Livingston*, the court found that the health insurance provider was protected by the doctrine of sovereign immunity because a judgment against it would expose the government to liability under the terms of the parties' indemnity agreement. *See id*. The indemnity agreement entitled the insurance provider to indemnity "unless the liability

underlying the judgment was the direct consequence of conduct . . . determined by judicial proceedings . . . to be criminal in nature, fraudulent or grossly negligent." *Id.*

In this case, some of the patients participating in the Hospitals' outreach programs were insured by medical plans provided under the FEHBP.[2]  Authority for the FEHBP derives from the Federal Employee Health Benefit Act ("FEHBA"), which among other things, vests OPM with the sole authority to contract for the provision of federal employee health plans and to determine the benefit structure of each plan.  FEHBA and its implementing regulations also establish a framework for the supervision and administration of FEHBA plans.  For example, OPM has promulgated regulations that govern contracted carriers' provision of health services.

One such regulation, 48 C.F.R. § 1652.222-70, pertains to fraud, waste and abuse of resources.  Under that regulation, insurance carriers agree "to notify OPM of any Significant Event within ten (10) working days after the [c]arrier becomes aware of it."  *Id.* § 1652.222-70(a).  A Significant Event includes any "fraud, embezzlement or misappropriation of FEHB funds."  *Id.* § (a)(12).  This regulation

---

[2] The record reflects that the percentage of FEHBP claims at issue was, however, quite small, and almost all the subject patients were privately insured.

is included in OPM's contracts with insurance carriers. *See, e.g.*, 2013 OPM-BCBSA Contract, Section 1.10(a), ECF No. 1-3, at Ex. A. OPM's contracts also require carriers to "[c]onduct a program to assess the vulnerability to fraud and abuse and . . . [to] operate a system designed to detect and eliminate fraud and abuse . . . by providers providing goods and services to FEHB Members, and by individual FEHB members." *See, e.g.*, *id.*, Section 1.9(a).

Plaintiffs frame their case as based on actions Defendants allegedly took outside of the normal fraud reporting requirements in their contracts. Plaintiffs assert that this case is about the fabricated spreadsheets and false information that Defendants provided to the authorities *after* they had fulfilled their initial reporting obligation to OPM. As such, they contend that Defendants' actions are not related to their OPM contracts. The FAC does not refer to Defendants' contracts.

Defendants, on the other hand, contend that all of their actions were taken pursuant to their contractual obligation to report suspicion of fraud and cooperate with the federal authorities to investigate such allegations. They dispute that they did anything more than report their suspicions and assist in the investigation of those suspicions. In their view, this case is centered on the fraud reporting requirements under their OPM contracts and the actions they took pursuant to those requirements.

At this stage of the litigation and based on the limited record before the Court, the Court cannot determine whether Defendants were acting within the scope of their authority and pursuant to their OPM contracts when they submitted the claims data spreadsheets to the authorities.  Plaintiffs' claim here is that Defendants intentionally and fraudulently inserted false codes into the claims spreadsheets to make it appear that the Hospitals' billing was fraudulent.  They contend that the purpose of the fraudulent reporting was to instigate a prosecution of Plaintiffs and others involved in the outreach programs.  These allegations, if true, would indicate that Defendants exceeded the scope of any delegated authority and would therefore preclude the application of immunity.  Further, as the foregoing cases show, immunity does not apply in cases of intentional torts and fraud.

The Court similarly does not have sufficient evidence to determine whether the government is the real party in interest here.  Unlike in the *Livingston* case, Defendants have not proffered an indemnity agreement that shows that the government would be liable for any judgment against Defendants.  Moreover, Plaintiffs' claims generally sound in intentional torts that would not be imputed to the government.

Immunity does not exist simply because Plaintiffs' claims relate to the administration of FEHBA plans or the billing of claims under those plans.  Even though the Court agrees that this lawsuit exists because medical services were provided to some patients enrolled in FEHBA plans and that fact cannot be excised from the analysis as Plaintiffs seek to do, it remains that the FAC does not seek payment or damages pursuant to the plans.  The cases Defendants cite (*e.g.*, *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 169 F. Supp. 3d 1058, 1070–71 (S.D. Cal. 2016) and *Mentis El Paso, LLP v. Health Care Serv. Corp.*, 58 F. Supp. 3d 745, 747–48 (W.D. Tex. 2014)) are inapposite because the plaintiffs in those cases were suing for payments or reimbursement for services rendered under the federal health plans.

Further, most of the subject claims were for patients privately insured by Defendants, not FEHBP patients.  It is not clear to the Court why immunity would apply for reporting relating to the private insured claims.

For all of the above reasons, the Court declines to dismiss the FAC on the basis of sovereign or official immunity.[3]

---

[3] Although not a subject matter jurisdiction issue, the Court also finds that the record currently does not support statutory immunity under O.C.G.A. §§ 33-1-16 and 33-39-22.  O.C.G.A. § 33-1-16)(d) expressly states that immunity does not extend to instances of fraud, bad faith or malice.  O.C.G.A. § 33-39-22 likewise

## B.    Failure to State a Claim

Defendants argue that:  (i) Plaintiffs' claims are preempted by FEHBA; and (ii) Plaintiffs have failed to state a claim as to all causes of action.  The Court will address each of those arguments in turn.

### 1.    Legal Standard

In evaluating a motion to dismiss under Rule 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Traylor v. P'ship Title Co., LLC*, 491 F. App'x 988, 989 (11th Cir. 2012).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief[, however,] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement.") (internal punctuation omitted) (quoting *Twombly*, 550 U.S. at 557).

Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*  "This standard does not require a party to plead

---

"provide[s] no immunity for disclosing or furnishing false information with malice or willful intent to injure any person."

facts with such particularity to establish a significant probability that the facts are true, rather, it requires a party's pleading of facts to give rise to a 'reasonable expectation that discovery will reveal evidence [supporting the claim].'" *Burch v. Remington Arms Co., LLC*, No. 2:13-cv-00185, 2014 WL 12543887, at *2 (N.D. Ga. May 6, 2014) (quoting *Twombly*, 550 U.S. at 555) (alteration in original). *See also Twombly*, 550 U.S. at 570 (dismissing complaint because the plaintiffs did not state facts sufficient to "nudge[] their claims across the line from conceivable to plausible").

At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Traylor*, 491 F. App'x at 990 (quoting *Iqbal*, 556 U.S. at 678).

Before addressing the substance of Defendants' arguments, the Court will consider whether to accept the documents attached to Defendants' Motion and the extensive extrinsic evidence that Defendants have cited in support of their Motion.

Generally, "[a] court's review on a motion to dismiss is 'limited to the four corners of the complaint.'" *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citation omitted). "If . . . matters outside the pleadings are

presented to and not excluded by the court, the motion [to dismiss] must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  *See also Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985) (stating that "[t]he court has discretion as to whether to accept material beyond the pleading that is offered in conjunction with a 12(b)(6) motion" but "once the court decides to accept matters outside the pleading, it must convert the motion to dismiss into one for summary judgment").

The conversion rule, however, does not apply to "any documents referred to in the complaint which are central to the claims."  *Wilchombe*, 555 F.3d at 959.  A court may consider those documents as "part of the pleadings."  *Brooks*, 116 F.3d at 1369.  As such, the Court will consider as part of the pleadings documents attached to Defendants' Motion that are referenced in the FAC.  This includes the indictment and superseding indictment.  *See Wilchombe*, 555 F.3d at 959.

The records for which Defendants seek judicial notice require different treatment.  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose

accuracy cannot reasonably be questioned."[4]  Fed. R. Evid. 201(b).  The Eleventh

Circuit Court of Appeals has explained that these safeguards are in place because

"to deprive a party of the right to go to the jury with his evidence where the fact

was not indisputable would violate the constitutional guarantee of trial by jury."

*United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).  The *Jones* court also

noted that it is not permissible to take judicial notice of a fact merely because "it

has been found to be true in some other action."  *Id*.  Rather, "a court may take

notice of another court's order only for the limited purpose of recognizing the

'judicial act' that the order represents or the subject matter of the litigation."  *Id*.

   In *Collins v. Battle*, one of the litigated issues concerned the health risks of

teeth whitening.  No. 1:14-CV-03824-LMM, 2015 WL 10550927, at *10 (N.D.

Ga. July 28, 2015).  The complaint alleged that the risks associated with teeth

whitening were minimal and consisted primarily of temporary tooth and gum

sensitivity.  *See id*.  In evaluating the defendant's motion to dismiss, the court

agreed to take judicial notice of position papers on teeth whitening that the

---

[4] Examples of the kind of things about which courts ordinarily take judicial notice include "'(1) scientific facts:  for instance, when does the sun rise or set; (2) matters of geography:  for instance, what are the boundaries of a state; or (3) matters of political history:  for instance, who was president in 1958.'"  *Collins v. Battle*, No. 1:14-CV-03824-LMM, 2015 WL 10550927, at *9 (N.D. Ga. July 28, 2015) (citation omitted).

defendant cited but only for the limited purpose of acknowledging that the reports existed.  *Id*.  The court refused to take judicial notice of the reports for the purpose of establishing that there are significant health risks from teeth-whitening.  *Id*.  The court explained that "taking judicial notice of any risks associated with teeth whitening, beyond the 'minimal' risks alleged in the complaint, would not only be in violation of Federal Rule of Evidence 201, as this fact is clearly disputed, but would also go against the [c]ourt's mandate to take all facts alleged in the complaint as true, as per the [c]ourt's task on a motion to dismiss."  *Id*.

Here, the Court will similarly take judicial notice that the Criminal Docket exists and that it includes information regarding plea deals of alleged co-conspirators, statements made by the prosecution regarding the issues in contention, the court's ruling on Fletcher's motion for acquittal, etc.  However, the Court declines to take judicial notice of disputed facts or accept those facts for the truth of the matter asserted therein.  *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (noting that a court may take judicial notice of a document when considering a motion to dismiss "for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents").

The Court acknowledges that Defendants have cited two cases where district courts in malicious prosecution cases appear to have considered the underlying criminal trial transcript.  In *Jannuzzo v. Glock, Inc.*, No. 1:15-CV-2445-TWT, 2016 WL 3076651, at *4 (N.D. Ga. June 1, 2016), the plaintiff argued that it was improper to consider the criminal trial transcript without converting the motions to dismiss into ones for summary judgment.  The court disagreed because the transcript was "a matter of public record."  *Id*.  It does not appear that the plaintiff disputed the *contents* of the transcript or what inferences could be drawn from the statements therein.

In *Armstrong v. Floyd Cnty.*, No. 4:13-CV-0050-HLM, 2013 WL 8711442, at *4 (N.D. Ga. Dec. 3, 2013), the court similarly considered the criminal trial transcript because it was a matter of public record but relied on the transcript in support of (versus to contradict) the plaintiff's claims.  The court stated that the plaintiffs' allegations and the transcript of the plaintiffs' criminal trial supported denial of the motion to dismiss.  *See id*. at *13.

Here, Plaintiffs dispute certain materials on the Criminal Docket and/or the inferences that may be derived from them, and Defendants seek to use the materials to contradict Plaintiffs' allegations.  *Jannuzzo* and *Armstrong* are

therefore inapposite and do not provide support for the extensive and contested use of the Criminal Docket that Defendants propose.

Moreover, the docket contains over 1,000 entries spanning three and a half years.  It would be impossible to review, understand in context and resolve the factual disputes that Plaintiffs raise at this early stage of the litigation—even if that were permitted.

### 2. Preemption Arguments

5 U.S.C. § 8902(m)(1) provides that "[t]he terms of any [FEHBA] contract . . . which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans."  Therefore, "[t]wo independent conditions must be satisfied in order to trigger preemption under § 8902(m)(1).  First, the FEHBA contract terms at issue must 'relate to the nature, provision, or extent of coverage or benefits.' Second, the state laws at issue must 'relate[ ] to health insurance or plans.'" *Mahajan v. Blue Cross Blue Shield Ass'n*, No. 16-CV-6944 (PKC), 2017 WL 4250514, at *6 (S.D.N.Y. Sept. 22, 2017) (citations omitted, alterations in original).

Courts have long grappled with the question of how to define "relate" in the FEHBA preemption context. The Eleventh Circuit in *Blue Cross & Blue Shield of Florida, Inc. v. Department of Banking & Finance* "conclude[d] that a state law 'relates to health insurance or plans' within the meaning of section 8902(m) if it has a connection with or reference to such insurance or plans." 791 F.2d 1501, 1504 (11th Cir. 1986) (citation omitted). The court acknowledged that "[e]xactly where the line of 'relation' should be drawn is a difficult question" and declined to offer a bright line rule. *Id*. at 1506.

At issue in *Department of Banking & Finance* was the plaintiff's challenge to a plan requirement that carriers return uncashed checks to the insurance fund after two years despite Florida's unclaimed property statute, which required uncashed checks to be sent to the state. *See id*. at 1503. The court ultimately found that given the "ambiguous legislative history" of the preemption provision, it was "reasonable" for the district court to conclude that the Florida statute was preempted by FEHBA to the extent that the OPM contract required a different process for the disposition of uncashed checks. *See id*. at 1506.

Although none of the cases Defendants cite in support of their argument for preemption square with the facts of this case, the cases do provide some guidance to the Court's analysis. For example, the Court notes that the deciding factor for

preemption in those opinions appears to be whether the state law would require a resolution of the issue that was different from what the OPM contract would allow. *See, e.g.*, *Brady v. Brady*, No. 819CV1268T24SPF, 2019 WL 3206871, at *4 (M.D. Fla. July 16, 2019) (finding preemption where the plaintiff sought a resolution of a benefits determination challenge that was contrary to the terms of the OPM master contract); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 169 F. Supp. 3d 1058, 1062 (S.D. Cal. 2016) (finding preemption where a California statute would require a different level of reimbursement to a physician than the carriers could offer under their contracts); *Gonzalez v. Blue Cross Blue Shield Ass'n*, 62 F.4th 891, 904–05 (5th Cir. 2023) (finding preemption where the plaintiff's common law claim sought to hold the carrier liable for denying a particular type of therapy that was not covered by their plan); *Williams by Williams v. Blue Cross & Blue Shield of Virginia*, 827 F. Supp. 1228, 1230 (E.D. Va. 1993) (finding preemption of the plaintiff's tort claims relating to the way in which the plaintiff's "health benefits request" was handled under the plan).

In this case, the Court notes Defendants' point that the FAC alleges that Defendants' underlying motivation for allegedly falsifying the claims data was to avoid paying claims. In that sense, the Court understands Defendants' argument

that Plaintiffs' claims relate to the provision of benefits under a FEHBA plan.  The Court also understands Defendants' position that Plaintiffs' claims bear on the fraud reporting provision of their OPM contracts because all they did was report suspected fraud as required by their OPM contracts.

However, as set forth in the FAC, Plaintiffs' claims go much further than that.  The gravamen of Plaintiffs' claims—at least as they have framed it in the FAC—is the allegedly fraudulent nature of Defendants' reporting to federal authorities, not the fact that Defendants reported their suspicions.  *See, e.g.*, FAC, ECF No. 64, 147 (Defendants "knew their fraud allegations were fabricated, but they spread them anyway hoping that prosecutors, regulators and others would pressure Plaintiffs and destroy LifeBrite's business.").

Unlike the cases that Defendants' cite in support of their preemption argument, the FAC does not allege that Defendants are liable for reimbursement of patient claims or denial of benefits under a FEHBA plan.  Nor does the FAC seek to compel actions that would be contrary to an OPM contract provision.  In other words, it is questionable whether Plaintiffs' claim for fraudulent reporting relates to coverage or benefits under a FEHBA plan or that it would otherwise contradict a provision of Defendants' OPM contracts.  *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 686 (2006) (stating that the FEHBA preemption provision

23

displaces state law "on matters of 'coverage or benefits'").  Accordingly, the Court finds that FEHBA does not preempt Plaintiffs' claims.

For the same reasons, the Court finds that there is no implied preemption. "'Conflict [or implied] preemption occurs either when it is physically impossible to comply with both the federal and the state laws or when the state law stands as an obstacle to the objective of the federal law.'"  *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1253 (11th Cir. 2022) (citation omitted).

Here, Defendants have not demonstrated that Plaintiffs' claims would obstruct the administration of OPM contracts or that they would otherwise find it impossible to comply with both the terms of their OPM contracts and their legal obligation not to make fraudulent reports or instigate malicious prosecution.

### 3. Malicious Prosecution (Count I)

Under Georgia law, "[a] criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action."  O.C.G.A. § 51-7-40.

> Although an aggrieved party has an especially heavy burden in such cases since his interest is weighed against the public's interest in encouraging citizens to report violations of law, a plaintiff may prevail if each of the following elements is pled and proved:  (1) prosecution for a criminal offense instigated by defendant; (2) issuance of a valid warrant, accusation, or summons; (3) termination of the prosecution in favor of plaintiff; (4) malice; (5) want of probable cause; and (6) damage to the plaintiff.

*Willis v. Brassell*, 469 S.E.2d 733, 737 (Ga. Ct. App. 1996).

The liability line for malicious prosecution is drawn between a defendant "'actually instigating or procuring the institution of criminal proceedings" on the one hand and a defendant "merely laying information before a law enforcement official without in any way attempting to influence his judgment'" on the other hand. *Id*. (citation omitted). "A person may be liable where 'he gave information [to the investigating officer] which he knew to be false and so unduly influenced the authorities.'" *Id*. (affirming the jury's verdict in favor of the plaintiff where she presented evidence "that tended to prove that [the defendant] relayed to the police information which he knew to be false, misleading or materially incomplete") (citation omitted, alteration in original). "'[I]nitiation of the criminal action need not be expressly directed by the party to be held liable.'" *Brooks v. H & H Creek, Inc.*, 478 S.E.2d 451, 454 (Ga. Ct. App. 1996) (citation omitted).

Viewing the allegations in the FAC as true and in the light most favorable to Fletcher, the Court finds that Fletcher has sufficiently alleged a malicious prosecution claim. At the heart of the FAC is the allegation that Defendants had no basis for providing false or misleading POS code 22 data to federal authorities because the billing information the Hospitals submitted to Defendants was accurate and did not include such a code. Fletcher contends that Defendants intentionally

provided such false information with the intent of having Plaintiffs prosecuted so that Defendants could avoid paying for valid laboratory testing claims. These allegations are sufficient on prongs one (instigation of the criminal prosecution), four (malice) and five (lack of probable cause) of the malicious prosecution test.

The FAC further alleges that a grand jury indicted Fletcher based on Defendants' reporting, and Fletcher was ultimately acquitted. These allegations are sufficient on prongs two (issuance of a valid summons) and three (termination of the prosecution in favor of plaintiff) of the test.

Finally, the FAC asserts that Fletcher suffered emotional distress and pecuniary damages, including over $2 million dollars in legal fees. These allegations satisfy prong six (damages) of the test.

Defendants argue that the FAC does not plausibly allege that Defendants instigated Fletcher's prosecution. They contend that (i) the FAC does not allege that any defendant made any statement to the government regarding Fletcher and that the government and the grand jury made the decision regarding whom to charge; (ii) Fletcher does not plausibly allege that the POS code was material to the charging decision; and (iii) the inclusion of the POS code in the data provided to the grand jury "cannot be a misrepresentation" because the grand jury subpoenas requested all relevant information.

The Court disagrees.  Among other allegations, the FAC specifically asserts that "Defendants' tortious scheme included providing false documents and false information to the Department of Justice ("DOJ") to persuade the DOJ to prosecute *Fletcher* and others[] and providing false testimony and false documentation to a federal Grand Jury to persuade the Grand Jury to return an indictment against *Fletcher* and others."  FAC, ECF No. 64, ¶ 66 (emphasis added).

Further, Defendants' materiality argument regarding the POS code relies on an analysis of records in the Criminal Docket, which the Court has declined to judicially notice for the reasons stated above.

In any event, Georgia state courts' formulation of the malicious prosecution test does not involve a requirement that Fletcher show at the pleading stage that the allegedly misleading information was material to the prosecutor's charging decision.

Defendants also argue that the FAC does not plausibly allege the absence of probable cause because (i) the judge denied Fletcher's motion for acquittal; (ii) Defendants had probable cause to allege that Fletcher engaged in the charged offense given Plaintiffs' admission in the FAC that LifeBrite performed tests that were billed through the Hospitals; (iii) Fletcher's alleged co-conspirators took plea deals pursuant to which they admitted to the billing scheme; (iv) the indictments

are additional evidence of probable cause; and (v) Fletcher does not allege that

"but for" the POS data, there would have been an absence of probable cause.

The Court finds that these arguments are not well taken at this stage of the

litigation. First, while it is true that "probable cause is established when a trial

judge denies a motion for directed verdict of acquittal," this presumption "can be

overcome by proving the order denying the motion was procured by use of fraud or

corruption." *Akins v. Warren*, 375 S.E.2d 605, 606 (Ga. 1989); *see also Wolf*

*Camera, Inc. v. Royter*, 558 S.E.2d 797, 801–02 (Ga. Ct. App. 2002) (affirming the

jury's malicious prosecution verdict in favor of the plaintiff, despite the trial

court's denial of the plaintiff's motion for directed verdict because "there was

evidence in the malicious prosecution trial which could support the jury's

determination that such denial was obtained through fraud committed by the

defendants").[5]

In this case, the FAC is replete with allegations that Defendants fraudulently

provided false information to the authorities, which formed the basis of Fletcher's

---

[5] The presumption with respect to an indictment can similarly be rebutted. *See*
*Fleming v. U-Haul Co. of Georgia*, 541 S.E.2d 75, 77–78 (Ga. Ct. App. 2000)
(stating that the "return of an indictment by the grand jury investigating the alleged
offense is prima facie, but not conclusive, evidence of the existence of probable
cause" and that such presumption can be rebutted with a showing that the
prosecutor did not "make a 'fair, full and complete statement of the facts as they
exist[ed]'") (citation omitted).

prosecution.  Accepting those allegations as true and viewing them in the light most favorable to Fletcher, the Court finds that Fletcher has pleaded sufficient facts to rebut the presumption regarding his indictments and the denial of his motion for acquittal.

Defendants other probable cause arguments rely on disputed facts or documents in the Criminal Docket.  As set forth above, it is not appropriate for the Court to engage in the weighing of disputed facts on a Rule 12(b)(6) motion to dismiss.

Based on the foregoing analysis, the Court finds that Fletcher has stated a claim for malicious prosecution.[6]

### 4.    Georgia RICO (Count II)

O.C.G.A. § 16-14-4 sets forth the requirements for a RICO claim.  Under Section (a) of the statute, it is "unlawful for any person, through a pattern of racketeering activity . . . to acquire . . . any interest in or control of any enterprise,

---

[6] Within the malicious prosecution count of the FAC, Fletcher asserts that Defendants "assisted each other[]" and "conspired" in the malicious prosecution of Fletcher.  Defendants argue that Fletcher has not sufficiently alleged a civil conspiracy or aiding and abetting claim.  They contend that the facts alleged would more so support an inference of independent parallel action by Defendants.  To the extent that Fletcher intends to assert civil conspiracy and aiding and abetting claims in conjunction with the malicious prosecution count, the Court finds that Fletcher has sufficiently alleged these claims.  *See* Section II(B)(4), *infra* (finding that Plaintiffs sufficiently alleged their RICO enterprise and conspiracy claims).

real property, or personal property of any nature, including money." O.C.G.A. §

16-14-4(a). Section (b) provides that it is "unlawful for any person employed by or

associated with any enterprise to conduct or participate in . . . such enterprise

through a pattern of racketeering activity." O.C.G.A. § 16-14-4(b). Section (c)

makes it unlawful "to conspire or endeavor to violate any of the provisions of

subsection[s] (a) or (b)" of the statute. O.C.G.A. § 16-14-4(c).

A pattern of racketeering generally means committing two or more of the

predicate offenses enumerated in the statute. *See* O.C.G.A. § 16-14-3(4);

*Jannuzzo*, 721 F. App'x at 884. "[T]his does not mean that each RICO defendant

must commit at least two acts to come under the [statute's] prohibitions." *Faillace*

*v. Columbus Bank & Tr. Co.*, 605 S.E.2d 450, 453 (Ga. Ct. App. 2004). Rather,

"what matters is the existence of a pattern of criminal activity (including at least

two interrelated acts) and each defendant's participation in that pattern, whether by

one act or more." *Id*.

"Civil RICO claims, which are essentially a certain breed of fraud claims,

must be pled with an increased level of specificity." *Ambrosia Coal & Const. Co.*

*v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). Courts have therefore

applied Rule 9(b)'s heightened pleading standard to RICO claims. *See, e.g.*, *id*.

"To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise

statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the [p]laintiffs; and (4) what the [d]efendants gained by the alleged fraud."  *Id*.

"Specificity under Rule 9(b) does not, however, eliminate the concept of notice pleading."  *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 662 (11th Cir. 2015).  "The particularity requirement may be relaxed for allegations of 'prolonged multi-act schemes.'"  *Id*. (citation omitted).  This relaxed standard "permits a plaintiff to plead the overall nature of the fraud and then to allege with particularity one or more illustrative instances of the fraud."  *Id*. at 663.

Here, Defendants argue that Plaintiffs have failed to state a Section (a) RICO claim because (i) Plaintiffs have not sufficiently alleged two acts of racketeering activity by each defendant; (ii) they have not plausibly alleged that each defendant knew of the falsity of the alleged misstatements; and (iii) Plaintiffs have not sufficiently alleged proximate cause.[7]

---

[7] Defendants also argue that Plaintiffs are presumed to know the law, but the Court is not clear on how this legal principle relates to Defendants' position.

Defendants further argue that Plaintiffs have failed to state a claim under Sections (b) and (c) of the statute because they have neither alleged the existence of an enterprise nor demonstrated the existence of a conspiracy.

The Court is not persuaded by Defendants' arguments. First, the Court finds that the FAC has adequately alleged mail and wire fraud as predicate acts. To state a claim for mail and wire fraud, a plaintiff must show that the defendant mailed information or used interstate transmission facilities in a scheme to defraud. *See S. Intermodal Logistics, Inc. v. D.J. Powers Co.*, 10 F. Supp. 2d 1337, 1352–53 (S.D. Ga. 1998).

In this case, the FAC generally alleges that Defendants engaged in a scheme to falsely accuse Plaintiffs of fraudulent billing in order to instigate the prosecution of Plaintiffs. Plaintiffs contend that the ultimate goal of the scheme was to end laboratory outreach programs and thereby avoid paying millions of dollars in laboratory testing claims. Plaintiffs claim that the scheme was accomplished by using the mail and interstate wires.

Specifically, the FAC asserts that Defendants attended a Healthcare Fraud Prevention Partnership meeting on September 1, 2016, at which they discussed the alleged POS code 22 billing scheme. On September 7, 2016, Defendant Florida Blue posted an alert regarding the alleged fraud in the SIRIS database, which is

operated across state lines by the National Health Care Anti-Fraud Association. The alert identified Regional General Hospital, for which LifeBrite served as a reference laboratory, as part of the scheme.  Defendants reviewed Florida Blue's SIRIS fraud alert.  Florida Blue and Aetna participated in a subsequent telephone call during which they discussed the alleged billing scheme.  Investigators for Defendants also discussed the alleged billing scheme with one another.

Defendant BCBS Ga made a criminal referral to federal authorities and shared emails with them regarding the alleged billing scheme.  Based on those communications, the United States Attorney for the Middle District of Florida decided to pursue a case against Fletcher and others.

Defendants allegedly maintained that the claims data submitted by the Hospitals had been lost, and they instead transmitted claim spreadsheets to the authorities that Plaintiffs contend included false POS code 22 information. Defendants met with federal authorities on numerous occasions to discuss the false claims data.

Plaintiffs allege that Theresa Jackson of Aetna falsely testified before the Grand Jury on June 5, 2019, that the laboratory testing claims were fraudulent because they were submitted with a POS code 22.  She later testified at Fletcher's second trial that the hospitals did not include the POS code 22 in their claims and

that it was Aetna who added the code to the claims.  She stated that there was no

fraud because Aetna's contract allowed for pass-through billing.

The Court notes that under the relaxed pleading standard described in

*Burgess*, it is sufficient to plead the overall nature of the fraud and then provide

illustrative examples of the fraud as Plaintiffs have done here.  As Plaintiffs further

explain, Georgia law does not require a plaintiff to plead two predicate acts per

defendant.  A single predicate act by a defendant in conjunction with predicate acts

by other defendants is sufficient.  *See Faillace*, 605 S.E.2d at 453.[8]  In short, these

allegations are adequate as to the mail and wire fraud predicate acts.[9]

---

[8] Defendants contend that Plaintiffs must establish two predicate acts per
defendant.  They argue that *Faillace* is in "'direct conflict'" with the majority of
Georgia decisions and that the "weight of the authority" against *Faillace* "is clear."
However, the Court does not interpret the cases that Defendants cite to contradict
*Faillace*.

[9] Plaintiffs also contend that they have alleged perjury and obstruction of justice as
additional predicate acts.  While the FAC could do a better job of connecting the
dots regarding these predicate acts, the Court is required to view the facts in the
light most favorable to Plaintiffs and draw reasonable inferences therefrom.  Also,
the standard on a motion to dismiss is plausibility.  With these principles in mind,
the Court finds that there are sufficient facts in the FAC to plausibly allege perjury.
This includes the allegation that an Aetna representative testified falsely before the
Grand Jury.  *See* O.C.G.A. § 16-10-70 ("A person to whom a lawful oath or
affirmation has been administered . . . commits the offense of perjury when, in a
judicial proceeding, he or she knowingly and willfully makes a false statement
material to the issue or point in question.").  The Court also finds that the
allegation that Defendants provided false claims spreadsheets to federal authorities
after claiming that the underlying billing data had been lost supports Plaintiffs'
allegation of obstruction of justice.  *See* 18 U.S.C. § 1519 (setting forth penalties

The above allegations are also sufficient to plead an enterprise and a conspiracy under Sections (b) and (c) of the RICO statute.  *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020) (stating that to plead an association-in-fact enterprise, a plaintiff must allege that a group of defendants had a shared purpose and sufficiently long shared relationships to pursue the enterprise's purpose); *United States v. Gonzalez*, 921 F.2d 1530, 1539 (11th Cir. 1991) (stating that a RICO conspiracy "requires proof of an agreement to violate a substantive RICO provision"); *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1309 (11th Cir. 2022) (stating that "[d]irect evidence of a RICO conspiracy is not required" and that "the existence of [the] conspiracy may be inferred from the conduct of the participants") (citation and punctuation omitted).

With respect to proximate cause, the Court is not persuaded by Defendants' argument that Plaintiffs have failed to sufficiently allege a connection between their damages and Defendants' actions.  The FAC alleges that Fletcher suffered emotional distress and pecuniary damages as a result of being prosecuted for the allegedly fraudulent billing scheme.  The FAC ties Fletcher's prosecution for the

---

for "[w]hoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any [federal] matter . . . or in relation to or contemplation of any such matter or case").

billing scheme directly to Defendants' actions in providing false information to the authorities. These allegations are sufficient to demonstrate proximate cause at the motion to dismiss stage. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (stating that the proximate cause requirement is satisfied where there is "'some direct relation between the injury asserted and the injurious conduct alleged'") (citation omitted).

Based on the foregoing analysis, the Court finds that Plaintiffs have adequately stated a claim under the Georgia RICO statute.

### 5.    Tortious Interference Claims (Counts III and IV)

Although tortious interference with business relations and tortious interference with contractual relations are different torts, they share common elements. *See Meadow Springs, LLC v. IH Riverdale, LLC*, 747 S.E.2d 47, 50 (Ga. Ct. App. 2013). Those elements are "that 'the defendant: (1) acted improperly and without privilege; (2) acted purposefully and maliciously with the intent to injure; (3) induced a third party not to enter into or continue a business relationship with the plaintiff; and (4) caused the plaintiff some financial injury.'" *Id*. (citation omitted).

Significantly, "[a] party cannot intentionally and maliciously induce a breach of a contract of which he or she is unaware." *Medlin v. Morganstern*, 601

S.E.2d 359, 362 (Ga. Ct. App. 2004) (affirming the grant of summary judgment because there was no evidence to contradict the defendants' assertion that they lacked both constructive and actual knowledge of the plaintiff's interest in the contract); *see also Tom's Amusement Co. v. Total Vending Servs.*, 533 S.E.2d 413, 418 (Ga. Ct. App. 2000) (finding that because the defendant was not aware of the agreement until the lawsuit was filed, the plaintiff could not meet the "intent prong" of the tortious interference claim); *Carolina Furniture Co. v. Rhodes, Inc.*, 603 F. Supp. 69, 76 (S.D. Ga. 1984) (emphasizing that "[w]ithout knowledge of the contractual relationship there can be no intentional interference with the relationship").

As a threshold matter, Defendants contend that LifeBrite's tortious interference claims are barred by the statute of limitations.  Defendants assert that tortious interference claims are subject to a four-year statute of limitations, yet LifeBrite has not alleged any conduct that occurred later than July 20, 2019.[10]

LifeBrite responds that the statute of limitations has not expired because the FAC alleges improper conduct as late as March 2023.

However, the paragraph in the FAC that LifeBrite cites alleges only that "Fletcher was acquitted of all charges in March 2023" and that "[i]n the course of

---

[10] Plaintiffs filed their complaint on July 20, 2023.

the criminal proceedings, in or about 2022 and 2023, Plaintiffs learned" of

Defendants' bad acts.  The Court is not convinced that a vague assertion regarding

Fletcher's criminal trial and subsequent acquittal plausibly alleges that Defendants

took any action with respect to Plaintiffs in 2022 or 2023, much less tortiously

interfered with LifeBrite's contracts or business relations during that time.

To the extent that LifeBrite intends to argue that the alleged torts that

occurred in earlier years were continuing through 2023, the Georgia Supreme

Court has expressly held that the continuing tort theory of liability is limited to

"'cases of bodily injury which develop only over an extended period of time.'"

*Corp. of Mercer Univ. v. Nat'l Gypsum Co.*, 258 Ga. 365, 365, 368 S.E.2d 732,

733 (1988).  Tortious inference claims are not personal injury actions and therefore

do not benefit from the continuing tort principle.

Accordingly, the Court finds that LifeBrite's tortious interference claims

(Counts III and IV) are barred by the statute of limitations.[11]

---

[11] Given this finding, the Court need not address the sufficiency of Plaintiffs'
tortious interference allegations.  The Court, however, notes that Plaintiffs' tortious
interference claims additionally fail because they have not plausibly alleged that
Defendants knew about the contracts and business relationships with which they
are alleged to have interfered.  The barebones allegation that "Defendants knew
about LifeBrite's current and prospective business relationships," FAC, ECF No.
64, 188, does not suffice.

### 6.      Fraudulent Scheme (Count V)

Plaintiffs fail to address Defendants' contention that Georgia has not recognized a cause of action for fraudulent scheme.  Plaintiffs respond only that they have alleged their claim with the requisite level of particularity and that they have sufficiently alleged the elements of a fraud claim.

Assuming that Plaintiffs intend to state a claim for fraud, they must sufficiently allege "'a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by [the] plaintiff, and damage to [the] plaintiff." *Johnston v. Correale*, 612 S.E.2d 829, 832 (Ga. Ct. App. 2005).  These elements must also be pleaded with particularity under Federal Rule of Civil Procedure 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

The Eleventh Circuit has held that:

Rule 9(b) may be satisfied if the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants "obtained as a consequence of the fraud."

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).

Here, although the FAC contains significant detail regarding the wrongful actions Defendants are alleged to have taken, it is not clear that the allegations would meet all of the Rule 9(b) pleading requirements as interpreted by the *Brooks* court.

Regardless, the FAC does not allege justifiable reliance by Plaintiffs, which is a necessary element of a fraud claim. Plaintiffs' response brief does not address this omission, even after Defendants identified it in their Motion.

Consequently, Plaintiffs claim for fraudulent scheme (Count V) fails.

### 7.    Defamation (Count VI)

Under Georgia law, actions for injuries to reputation "shall be brought within one year after the right of action accrues." O.C.G.A. § 9-3-33. Since the FAC was filed on July 20, 2023, Defendants can be liable only for statements made after July 20, 2022.

Defendants point out that the FAC does not provide the dates on which any allegedly defamatory statements were made.

Plaintiffs respond that the FAC alleges that Defendants continued to make defamatory statements through 2023. But the paragraphs Plaintiffs cite in support of this contention do not contain any specific facts regarding defamatory statements Defendants made or when they were made. The paragraphs simply

provide a "summary" of the alleged scheme, and the only date mentioned is August 2016.  That date relates to Defendants' investigations of the Hospitals' laboratory testing claims and is well outside the statute of limitations.

Accordingly, the Court finds that Plaintiffs' defamation claim (Count VI) is barred by the statute of limitations.[12]

## 8. Shotgun Pleading

Defendants argue that the FAC should be dismissed on shotgun pleading grounds because it incorporates by reference all preceding allegations, and it impermissibly lumps all Defendants together.

The standard for dismissal of a shotgun pleading is that the complaint is so deficient that "'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'"  *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1325 (11th Cir. 2015).  That is not the case here. The FAC provides Defendants with adequate notice of the claims against them and the grounds upon which each claim rests.  Indeed, Defendants were able to mount a vigorous defense and challenge to the sufficiency of the FAC.  As such, the Court declines to dismiss the FAC on shotgun pleading grounds.

---

[12] In light of this finding, the Court need not evaluate the sufficiency of Plaintiffs' allegations for this cause of action.

### C.     Other Issues

The Court will next address miscellaneous issues raised by the parties that are not directly related to jurisdiction or the sufficiency of the FAC.

### 1.     Aetna Defendants

Aetna Health Inc. (Georgia) and Aetna Health Inc. (Florida) (the "Aetna Defendants") argue that they are improper parties and should be dismissed.  They assert that they notified Plaintiffs of the proper Aetna parties to be named in this lawsuit, but Plaintiffs have refused to make the change.

The Aetna Defendants, however, do not explain *why* they are the improper parties and do not cite any legal authority for their position that the Court should compel Plaintiffs to make the change.  The Court therefore denies the Aetna Defendants' request without prejudice.

### 2.     Leave to Amend

Plaintiffs seek leave to amend their FAC should the Court identify any deficiencies in it.  Defendants argue that leave to amend should not be granted because Plaintiffs have already amended their FAC once, and they did not address any of the deficiencies that Defendants' original motion to dismiss identified.

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave."

While "[t]he court should freely give leave when justice so requires," *id*., Rule 15(a) "gives a district court 'extensive discretion' to decide whether or not to allow a party to amend a complaint," *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (citations omitted). The court does not abuse its "liberal discretion" by denying leave to amend when the amendment would prejudice the defendant, cause undue delays or is futile. *Campbell*, 166 F.3d at 1162. *See also Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (stating that denial of leave to amend is only appropriate where (1) there has been undue delay, bad faith, dilatory motive or repeated failures to cure deficiencies by amendments previously allowed; (2) allowing amendment would cause undue prejudice to the opposing party; or (3) amendment would be futile).

Here, the Court finds that there has not been undue delay, and amendment would not cause undue prejudice to Defendants at this early stage of the litigation. Additionally, the prior amendment was by stipulation to replace an improper party. Plaintiffs therefore have not had an opportunity to amend the substance of their FAC. Accordingly, the Court grants Plaintiffs leave to amend the FAC to address any identified deficiencies.

### III.   CONCLUSION

As set forth herein, the Court finds that Counts III, IV and VI of the FAC are barred by the statute of limitations, and Count V fails to state a claim upon which relief can be granted.  As such, those counts of the FAC are hereby **DISMISSED WITHOUT PREJUDICE**.  Plaintiffs may amend their FAC to address any deficiencies within fourteen days of the date of this Order.

**SO ORDERED** this 17th day of June, 2024.

**J. P. BOULEE**
United States District Judge